Case 14-3807, Maxitrate, Trattamento, Tomiko, et al, versus Super Systems Inc, et al. Oral argument not to exceed 15 minutes per side. Mr. Goodson for the opponent. Okay, clerk will call the date. Pretty good. Let me do it again.  May it please the court, counsel, I know when I was in law school that first year taking civil procedure that I would be standing before the Sixth Circuit Court of Appeals 41 years later arguing personal jurisdiction for the first time. That's exactly right. I would like to reserve five minutes for a vote, please. This is a case brought by Jeremy Hedman. It's a supplemental third-party complaint against Allianz Seguros, an international insurance company. Three claims we make. Allianz breached its Ohio duty to defend Maxitrate in good faith. Two, Allianz breached its contract with Maxitrate by not appearing and identifying and defending them. And third, Allianz is required by Ohio statute 392906 to pay the judgment that Hedman has against Maxitrate. The district court concluded that Allianz was not subject to personal jurisdiction of the court because constitutional due process requirements were not met. The long-arm statute of Ohio is not an issue in this case. Hedman only needs to show that the existence of Allianz Seguros ever took any action in Ohio. That's not the law. The law is that they take any intentional action that had a consequence in Ohio. I thought the Supreme Court rejected this. No, the Supreme Court still agrees that the personal jurisdiction is nothing more than forum, defendant, and cause of action. What's the litigation about? Is the litigation about something that should be in this forum and should be against this defendant? I thought involved in the court rejected the idea that if a defendant acts in a way that they should understand the cause of facts in some remote location, that that location is jurisdictional. The court said no. They said the Ninth Circuit in that case had improperly attributed a plaintiff's forum connections to the defendant, Seguros, and made those connections decisive in the jurisdictional analysis. They've got to be purposeful. Every case is specific, and you still have to follow the Southern Machine, three-prong test, that's still important, the Calder effects test. This is going to be purposeful there. And the court said this sort of reaction to litigation in a particular forum, that is not purposeful. Well, if you ignore your duty to your insurer, which is exactly what Valley-Anz Seguros did, you have engaged in a court in the forum. You can't sit back and say, just because I'm driving up here. When they insure somebody in Brazil, they're at the mercy of who happens to come into that facility. When they insure a house, and the house gets sold to a Swiss person, and then they don't defend, they're subject to action in Switzerland? No, no. It's stated they didn't do anything, any place except in Brazil, until they were hauled into court, and then they said we're not subject. But how does an insurance company ever hauled into court? You make a claim. You have a contract. I have a contract with my auto insurer. And they agree that if I do something wrong, and I get sued, so you're in Brazil, you have Brazilian car insurance, and you have an accident in Brazil, and then you decide to sue them in Ohio because you want money in Ohio. That's my real question here is this. Isn't it fortuitous that it's in Ohio? Hedman was injured, right, in Brazil. Now, Hedman, he could have sued in Brazil. Could have, sure. And if Seguros didn't defend, then he's injured because he needs his money in Ohio. But once Hedman was sued in Ohio in federal court, there's a company. Not by Seguros. No, but by Seguros Insurance. Now, keep in mind. If your insurer goes elsewhere and does something. Well, of course. And the contract that Maxitrate, the Brazilian heat-treated metals company, has with Allianz Seguros, they have a contract, an insurance contract. It says, Allianz says, we will defend you. We will indemnify you. No, no, no. There's no territory limitation on where they are going. When it covers the property liabilities of persons situated on Brazilian territory. Yes, that's just about where the injury occurs. Not where you're sued. That is not a territory limitation. Isn't that similar to you have a Brazilian auto policy, and an Ohio resident is injured in Brazil. He can choose to sue in Ohio. He might not succeed. No, no, no. That's not the same. It's not the same. It's more like if I was involved in an accident down here at Fifth and Main with a Brazilian citizen. Okay? I want to sue the Brazilian citizen here in America. Okay? I do. And he goes home. So he goes home. He's here. No. He's here causing the accident. But he goes home. So I'm never going to get any money unless I go to Brazil again. So I go to Brazil. I file suit. Right. He files a counterclaim against me, saying I ran the red light. My company, which happens to be Fireman's Lodge Malayans, better go defend me. I have a contract with them that says they have to, just like Maxi Trade did. You have a contract with a Brazilian-American company? Unless it has a territorial limitation on where you were sued, it doesn't matter where the action takes place. You could put a limitation on it. I think that's exactly what the court rejected at all. This idea that if you react to litigation that's instituted in a forum that's purposeful, what you need is a decision to insure somebody wherever they go, i.e. the motorist case. We have that. The motorist case, two differences there. The insurance company insures against liability for accidents in Tennessee. The accident happens in Tennessee. So they're subject to jurisdiction, the insurance company, in Tennessee. Here, a Brazilian company does not insure for bad things that happen in Ohio, and the incident didn't happen in Ohio. I'm not sure where that evidence comes from. The evidence in the record is that there isn't a territorial limitation on where they can be sued. That's the key. Let's just forget about forum. I'm just talking about the scope of the activities they will insure. They're saying, as I understand it, and I want you to correct me if I'm wrong, they're saying we insure basically against liabilities that arise in Brazil, things that happen in Brazil. I'm okay with that. But it doesn't mean that that's where the only place they're going to be sued is in Brazil. That's a different issue, about where the incident arises. They have a contract that's introduced as evidence in this argument. But they're not availing themselves of anything in Ohio. Sure they are. When they insure against liabilities that arise in Brazil. The company and motorist, they are availing themselves of Tennessee. They're not going to sell a policy that only insures driving in Ohio. They have to insure the driver wherever he or she goes. Why is that different than this policy? Because they didn't insure. It didn't say, and correct me if I'm wrong, that if Maxitrate's CFO has a company car in the Netherlands, and has an accident in the Netherlands, that that's covered. This isn't an auto policy. So suppose he, on behalf of the company, blows up a building in the Netherlands. Okay. It's different. No, no. Here in the Netherlands, that's what Judge Keflin says the policy says. You haven't pointed to the fact that it's wrong. No, there is nothing in the policy that puts a territory limitation on it. Any more than the Tennessee policy. Are you saying that Maxitrate goes out and builds a factory in Kazakhstan, and it's going to be covered by the government? No, they have a different policy for that. I'm just telling you that we're dealing with this case and this policy. Wagner Rivas put an affidavit out. He's the president of Maxitrate. He says, we bought insurance from Allianz de Burros. We paid premiums, and Allianz agreed to assist and defend us. Allianz knew, number one, that we are a global manufacturer of heat-treated metals. They know that when they signed the contract. They don't insure global activities, just stuff in Brazil. No, if the product was defective, they would have to defend against it. So that's the initial question. So if you had – you say that the policy would cover an accident from a Maxitrate facility. I'm sorry, I don't know. Maxitrate object of whatever they may call it. Product. Product. I don't know that. That's not fair. This isn't a product's liability policy. Yeah, see, that's right. This is the facility's policy. It's an accidental injury policy. Property liability is the person situated under the facility. And we know that's where it happened. But when you have a contract, an insurance contract as we had in this case, Allianz agreed to defend them if they are sued as a result of those injuries that occur here. By not defending, you've created a barrier. Basically, it seems to me you've said that, number one, the contract really means we agree to defend you anywhere in the world. And by doing that, they have availed themselves of every place in the world. No. In this case, they've availed themselves of Ohio. Well, but only because there's a contract between us. Somebody went out and sued as Maxitrate, but would it have been any different? Yes. Suppose Hedman had sued Maxitrate in Ohio. Suppose Hedman, for whatever reason, sued Maxitrate in Ohio. If you say that they agreed to defend Maxitrate anywhere in the world, then why wouldn't it be exactly the same? I'm not saying anywhere in the world, but I'm saying in Ohio because there was a contract. Not only in Ohio because he happened, Mr. Hedman, happened to be from Ohio. No, because there was a contract that Maxitrate had with an Ohio company. They had a distributorship agreement that we are the exclusive distributor. And that contract required that any suit filed by Maxitrate be filed in Ohio. Alley-ounce girl knows this. That's how it is. It is. It is. It is. It is. But what did Hedman do? Couldn't this whole thing? All right. Put it this way. If you say, ah, we lose if he had been a Pennsylvania resident or a New Jersey resident, everything else would have been the same. It would have been more difficult because there was no contract between Maxitrate and Ohio as there is in this case. When they insured Maxitrate's facility in Brazil, they're on the hook for everybody Maxitrate contracts with any place in the world. If there's an insurable injury that is caused to one of those people. No, not – I can't say everybody. But again, it's totally fortuitous. Who Maxitrate – I mean, Seguros doesn't know that the distributor's in Ohio and they're going to fire him and get a distributor in New Jersey. Well, Seguros should know. They reviewed their paperwork. They came in and required them to submit all their documents. We'll see about that. I have to say, you have your five minutes for review. Thanks. May it please the Court, Your Honors. My name is Hugh Bode. I represent Alliant Seguros S.A. Alliant Seguros S.A. is not an international insurance company. Alliant Seguros S.A. is an affiliate of a group of insurance companies under the Alliant's brand name. It is a Brazilian insurance company. It operates only in Brazil. It insures only Brazilian risks. I'm not an expert on Brazilian law, but my understanding is there are legal constraints that require Alliant Seguros to operate that way in Brazil. This case and the position advocated by the appellant starts with an assumption that doesn't exist. And that is this assumption that by Seguros not coming into Ohio, by staying out of Ohio, they've somehow breached some duty. That's the whole issue that needs to be decided. Was there ever any duty by Seguros to indemnify, defend, or otherwise assist Max Atreide when Max Atreide decided to sue Alliant? And the obvious position of Seguros is no, we don't have that duty. That's why we didn't do anything. Don't they have a duty to, I don't know where this goes, but don't they have a duty to defend Max Atreide, if that's how you say it, for an explosion that happens in Brazil? I believe their position is not, Your Honor. Their position, Seguros' position, this has to do with the Portuguese insurance policy. But my understanding from my client is they insure property in this case, not liability. And that's why they declined. In Brazil, they sent a letter to Max Atreide that says we don't cover you for that. And if there's any, you know, with all the mash-ups that we've had. So does that mean that if Hedman had sued in Brazil for his personal injuries, they would have said we don't cover that, it's just not in the policy? Correct. Okay. And all the machinations that happen in the settlement with the Colbett's agreement and the assignment of rights from Max Atreide to Hedman and the confession of a multi-million dollar, eight-figure judgment, that is all on Max Atreide? It's Max Atreide who gets harmed, not Mr. Hedman. If Max Atreide has to pay Mr. Hedman, it comes out on Max Atreide's behalf. Isn't there an argument that an assignment of Max Atreide's rights gives Hedman some opportunity to call Seguros into Ohio because he now has Max Atreide's rights? That's the argument. I think that's the argument. But again, as I understood it, that that assignment of Max Atreide's rights as the hook, that could have happened anywhere. They could have contracted in Portugal or Germany or Brazil, settled some other case between the two of them. Correct. And again, this is the case law Judge Black relied upon. It says that Person A can't do something that then creates jurisdiction over Person B. And Hedman and Max Atreide and anyone else can't do anything here in Ohio to haul Seguros in. Seguros has to do something. And the irony is the complaint here is, you know, we have jurisdiction over Seguros because they did nothing. I mean, the record is absolutely clear. There is no contact at all between Ohio and Seguros. None whatsoever. And Mr. Hedman, with his assignment of Max Atreide's rights, should take his putative rights down to Brazil and let a Brazilian court sort out the legal issues between a Brazilian insurer and now it's a Brazilian insurance assignee. I mean, it's – I can only say Judge Black. And there's no jurisdiction over this company here in Ohio. You can't create jurisdiction by filing a lawsuit, filing a counterclaim, and doing an assignment. Does the court have anything else they want to ask me? Thank you. No, thank you, Your Honor. Well, it's going to be tough. But first of all, the risk itself, whether or not it's insurable or not, is an issue that we didn't get to, obviously, because it was dismissed. Yeah, I don't want to suggest there's something. Yeah. And so – It's good just to – No, no. And we believe there is a specific clause in the contract that talks about explosions that occur. In this case, there was no evidentiary hearing, so the plaintiff only needs to make an unfaithful showing of jurisdiction. We submitted evidence in an affidavit that says that we, Wagner-Rivas, president of Maxitrade, I contracted with Allianz and Brooks to defend us. Page 8 of the contract – and I'll read this. Congratulations. This is to Maxitrade. You just acquired the Allianz Maxitrade Presario, a personalized insurance policy with a guaranteed quality service. And this insurance is guaranteed by Allianz, one of the largest insurance groups in the world with approximately 70 million clients spread across more than 70 countries. Why did Wagner-Rivas buy Allianz Insurance instead of Joe Smith down the street? Because they are a global manufacturer of heat-treated materials. Because they have a relationship with SSI in Ohio that requires them to travel back and forth. They take the SSI control systems and put it on their heat-treated furnaces. Okay? So they know, and Allianz knows, we can get sued. And when we get sued, we're going to sue SSI. If we get sued because one of our control systems goes bad, we're going to go back and go after them. All of this is foreseeable. That's the only issue at this point in the case. Is it foreseeable by Allianz Seguros that they could be brought into court in Ohio? Of course it's foreseeable. Because they're insuring a company that has a regular business relationship with Ohio. You would think that that would be a stated principle. If you insure someone for anything and they have a business relationship with people elsewhere, then you're doing business there. Are there any cases that you could point to that hold that? Other than the cases that just talk about what it requires for there to be a contact with a particular forum. I'm just saying a lot of times you say, well, God, there ought to be cases here. You've got international companies. You've got international insurance companies. You've got people who buy insurance in every country in the world. And those companies do business elsewhere. If that was enough, you would think there would be a yea or nay case where somebody made exactly that argument. Maybe this is the first one. Well, I think that the auto cases are probably the closest. Where when you buy your auto policy here in Ohio, I expect to be covered anywhere that's not outside of the territorial limits of my policy. Sometimes you look at your policy and say, well, we'll cover you 10 miles into Mexico. Or we won't cover you in Europe. Or Google will cover you in Canada. Well, I understand that. I'm not going to be covered. But if I'm driving my car within that 10 miles of Mexico and I have a wreck and I hurt somebody and I get sued in Mexico, they better defend me. But in that example, you're talking about jurisdiction being coterminous with coverage. No. I'm not exactly. If it's a covered loss, where you are sued doesn't really matter if it's a covered loss. As long as there's some relationship, as in this case. I don't understand that. It's a purposeful aboundment in a forum where it didn't happen and you didn't insure it at all. So then what's Alionso Gross talking about when it says we're an international insurance company? Do they have to go through and list every possible country that they might be sued in? What you just said, if I heard you right, is you cover the loss wherever the suit is. So you have an explosion in Brazil and the German who's injured sues in Kazakhstan just because he's got a good friend in Kazakhstan. And you get the process from the Kazakh court and you say you have jurisdiction over Kazakhstan. I misspoke. I qualified that after I said it because I meant to say if there's some relationship to the forum. Does Alionso Gross have some relationship to this Ohio forum? Yes. Does he have some relationship? Not if it's insured? No, no. In this case, I have to show that Alionso has a relationship because that's who we're suing. I have to show Alionso Gross has a relationship. You're showing it through Max's trade. I'm showing it through Max's trade because they knew that there was a risk that they were insuring in Ohio and that they were likely to be sued here. So when you're asking, okay, we're accepting premium dollars, and now there's a claim by not doing anything, I'm breaching my duty. I'm not paying my insurance. And that loss is happening in Ohio. The risk is because that's because there happens to be a worker from Ohio, right? No, it happens because there's a contract that Max's trade has that requires them to sue SSI in Ohio. Requires it? Requires it. There's a contract between the two. The distributorship of Seguros knows nothing. Sure they do. They had to submit – if you read the affidavit of rebus, they submitted all of their materials to Seguros before they were insured. They came and did an inspection of the facility. The facility. So you're saying that if Max Atrante made a new contract with a distributor in Pennsylvania, suddenly Seguros knows that they can be sued in Pennsylvania? Well, that's a different issue because I don't know if it was when the contract was signed. I mean, in this case, what our affidavit says, the slight evidence that we need to produce, is that there was a contract in existence with Ohio, an Ohio company, that required lawsuits in Ohio at the time the contract was presented and Seguros knew about it. Well, I mean, I can't speak for them. This is where we're getting back and forth. A property policy and an all-risk business policy. I mean, it was an umbrella policy. You know, maybe it might be different. Well, we didn't get to that point because we got thrown out on it. I mean, we're just saying – Okay, any other questions? Thank you. Thank you, counsel. The remaining cases will be submitted on briefs and you may adjourn the court. This honorable court is now adjourned.